UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| INDUSTRIAL TOWER AND | ) |
| WIRELESS, LLC, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C. A. No. 17-057-JJM-PAS |
| | ) |
| JOHN ESPOSITO, PAULA MOTTSHAW, | ) |
| DAVID PAOLINO, HEIDI COWELL, | ) |
| THOMAS DIRAIMO, ROBERT DELUCA, | ) |
| and HOLLY REGOLI, and as they are | ) |
| members of the TOWN OF FOSTER | ) |
| ZONING BOARD OF REVIEW, | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Plaintiff Industrial Tower and Wireless, LLC (ITW) filed this action seeking injunctive and other relief from Defendant the Town of Foster Zoning Board's ("the Board") decision denying it a special use permit for the construction of a telecommunications tower in the Town of Foster. Before the Court is ITW's Motion for Summary Judgment (ECF No. 16) to which the Board and Intervenor Defendants Robert and Mary-Elena DeLuca have objected and cross-moved for summary judgment. ECF Nos. 19, 20. After reviewing the submitted materials, including affidavits submitted with the motions, and hearing oral argument, the Court GRANTS ITW's motion, and orders the Board to grant the special use permit.

I.     FACTS AND BACKGROUND

In May 2016, ITW applied[1] for a special use permit seeking to build a telecommunications tower on a piece of property in Foster, Rhode Island. In support of its proposal, ITW included a site analysis with maps to demonstrate that the tower height limits and setback requirements complied with the applicable Foster ordinances. ITW also conducted propagation studies and analysis of alternative sites to determine whether there was a significant gap in cell coverage, that the proposed location would address such a gap, and that there was no other feasible site to fill the gap. The Board conducted a hearing on the application that included expert testimony from, among others, Kevin Delaney, ITW's Engineering and Regulatory Compliance Manager and John Champ, ITW's Site Acquisition Specialist, and Mr. and Mrs. DeLuca and their son, Robert DeLuca, Jr.

After a hearing, the Board denied the application by a three-to-two vote.[2] The Board issued its written denial on January 12, 2017, the written decision consisting of the minutes of the Board meeting and the Findings of Fact and Legal Conclusions. In the minutes, one of the "no" voters, Ms. Paula Mottshaw opined that ITW failed to do its due diligence in terms of siting the proposed tower and that ITW's application is incompatible with the Comprehensive Plan. In the Findings of Fact and Legal

---

[1] Prior to seeking Board approval, ITW sought and received approval from the Foster Planning Board, who found in its Master Plan Decision that the application was "consistent with the Comprehensive Community Plan and has satisfactorily addressed the issues where there are inconsistencies in accordance with the Rhode Island General Laws Section 45-23-30."

[2] Three members of the Board voted to issue the permit and two members voted against it, but according to the Board's rules, four affirmative votes are necessary for approval of a special use permit.

Conclusions section at the end of the decision, the Board cited the state statutes governing special use permits and the Foster Zoning Ordinances and concluded that "[f]rom the detailed testimony of the Professional witnesses, the Board accepts the facts as presented and described as reliable and probative and finds that the Applicant has NOT, through its authorized representatives, satisfied its burden as it relates to the standards reiterated above." ECF No. 1-4 at 11.

ITW sued the Board and its members in their official capacities, alleging a violation of the Federal Telecommunications Act of 1996 ("TCA") because it effectively prohibited the provision of personal wireless services in denying ITW's application for a special use permit. For relief, ITW requests that the Court order the Board to grant its special use permit.

## II. ANALYSIS

### A. Standing

Before it gets to the meat of ITW's motion, the Court considers the DeLuca's argument that ITW does not have standing to bring this suit under the TCA because, as a site acquisition company not a cell phone service provider, it cannot claim that it suffered harm from a significant gap in cell service coverage in Foster. ITW argues that it has standing because to bring a suit under the TCA, it needs only to be a "person adversely affected by any final action or failure to act by a State or local government ...", citing 47 U.S.C. § 332(c)(7)(B)(v). Its adverse treatment was the Board's decision to deny it a special use permit.

As part of the Court's standing inquiry, it must determine whether ITW's interest here is in the "zone of interests" safeguarded by the TCA. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388 (2014). In enacting that statute, Congress intended "to promote competition and higher quality in American telecommunications services and to encourage rapid deployment of new telecommunications technologies. One of the means by which it sought to accomplish these goals was reduction of the impediments imposed by local governments upon the installation of facilities for wireless communications, such as antenna towers." *Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115 (2005) (internal citation omitted). In light of these goals, the Court finds that the TCA protections extend beyond providers of personal wireless services to others involved with telecommunications technologies, including landowners and tower developers. *See Green Mountain Realty Corp. v. Leonard*, 688 F.3d 40, 44 (1st Cir. 2012) (cell tower manager); *ATC Realty, LLC v. Town of Kingston, N.H.*, 303 F.3d 91, 92 (1st Cir. 2002) (developer). ITW was "adversely affected" within the meaning of the TCA when the Board denied its special use permit application to build the proposed telecommunications tower in Foster and therefore has standing to bring this suit under the TCA.

B.  Substantial Evidence

While Congress clearly intended to ensure telecommunication's growth, the TCA also sought to preserve state and local control over zoning matters, specifically over the siting of cell phone towers, subject to several limitations. *T-Mobile S., LLC v. City of Roswell, Ga.*, 135 S. Ct. 808, 814 (2015); *Nat'l Tower, LLC v. Plainville*

4

*Zoning Bd. of Appeals*, 297 F.3d 14, 21–22 (1st Cir. 2002). The two limitations that ITW invokes in this case are that 1) any decision by a municipality "to deny a request to place, construct, or modify personal wireless service facility shall be in writing and be supported by substantial evidence in the written record;" 47 U.S.C. § 332(c)(7)(B)(iii); and 2) local zoning authorities "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II). ITW argues that the Board's decision fails under these two sections, justifying its reversal.

In a case invoking the TCA such as this, even though the motion is styled as one for summary judgment, the standard of review is driven by the nature of the TCA claim. The claim in this case is rooted in the question of whether the Board's decision denying ITW's application to build a cell tower was supported by substantial evidence.

> The 'substantial evidence' standard of review is the same as that traditionally applicable to a review of an administrative agency's findings of fact.' For motions for summary judgment, under the APA [Administrative Procedure Act], the Court's review 'is limited to the administrative record,' and the 'entire case' on review is a question of law.' Thus, a district court's role in considering summary judgment in a case such as this one is not to resolve contested fact questions which may exist in the underlying administrative record, but rather to determine the legal question of whether the Board's decision was supported by substantial evidence.

*Varsity Wireless, LLC v. Boxford Zoning Bd. of Appeals*, C.A. No. CV 15-11833-MLW, 2017 WL 4220575, at *10 (D. Mass. Sept. 22, 2017) (citations omitted).

Ultimately, a written decision must contain a "sufficient explanation of the reason for the denial 'to allow a reviewing court to evaluate the evidence supporting

5

those reasons.'" *Nat'l Tower*, 297 F.3d at 21 (quoting *Sw. Bell Mobile Sys., Inc. v. Todd*, 244 F.3d 51, 60 (1st Cir. 2001)). "[T]hese reasons need not be elaborate or even sophisticated, but rather, as discussed below, simply clear enough to enable judicial review." *T-Mobile S.*, 135 S. Ct. at 815. Conclusory statements simply citing local zoning ordinance provisions, however, are insufficient to meet the written denial requirement of the TCA. *See Nextel Communications of the Mid-Atlantic, Inc. v. Town of Randolph*, 193 F. Supp. 2d 311, 318-319 (D. Mass. 2002).

In evaluating whether substantial evidence supports a Board's decision, the Court must review the written record as a whole, but the Court's judicial review of a local regulatory agency decision is narrow.

> Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The reviewing court must take into account contradictory evidence in the record. But the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.

*Penobscot Air Servs., Ltd. v. Fed. Aviation Admin.*, 164 F.3d 713, 718 n. 2 (1st Cir. 1999) (citations omitted). Even though substantial evidence review is narrow, it "is not a rubber stamp." *Id.* The burden of showing that the Board's decision was not supported by substantial evidence is on the party who applied for relief, but "'courts defer to the decision of the local authority, provided that the local board picks between reasonable inferences from the record before it.'" *Green Mountain Realty*, 688 F.3d at 50 (quoting *Nat'l Tower*, 297 F.3d at 23.

Upon review of the written record as a whole, the Court finds that ITW has demonstrated that the Board's January 12, 2017 denial in writing is plainly deficient.

6

The discussion in the meeting minutes among Board members, raising the pluses and minuses of the application does not enable the Court to evaluate the evidence in support of the Board's denial. The Court cannot speculate about what specific evidence convinced the Board members to deny the application. Moreover, in the Findings of Fact and Legal Conclusions section where the Board makes its explicit denial, the Board cited the state statutes governing special use permits and the Foster Zoning Ordinances and concluded that "[f]rom the detailed testimony of the Professional witnesses, the Board accepts the facts as presented and described as reliable and probative and finds that the Applicant has NOT, through its authorized representatives, satisfied its burden as it relates to the standards reiterated above." ECF No. 1-4 at 11. This statement also fails to identify any facts upon which the Court may evaluate the evidence supporting its conclusions, relying instead upon little more than a conclusory statement that recites its ordinance and Comprehensive Plan and generally references the entire record. This conclusory statement does not meet the TCA's requirement that the decision be based on "substantial evidence in the written record."

Not only did ITW show that the decision was deficient, but it also cites to the record quite convincingly that it did submit substantial evidence that the proposed plan did comply with state law and local ordinances. It relies mainly on its real estate appraiser who opined that the cell tower would not have a negative impact on real estate values or alter the character of the neighborhood. The Court cannot find in the record any evidence to refute these opinions. On the contrary, one of the Board's

stated reasons for denial – that the application is inconsistent with the plan – was contradicted by the Master Plan Decision of the Foster Planning Board, who approved the application, determining that the tower plan was "consistent with the Comprehensive Community Plan and has satisfactorily addressed the issues where there are inconsistencies in accordance with" state law.

The Board "'is not free to prescribe what inferences from the evidence it will accept and reject, but must draw all those inferences that the evidence fairly demands.'" *Sw. Bell*, 244 F.3d at 59 (quoting *Penobscot Air Servs.*, 164 F.3d at 718). As such, the Court finds that the Board had no basis to draw an inference that the proposed plan was not in harmony with the rural character of the town. The Board's rejection of the special use permit application was not based on the substantial evidence in the written record as required by the TCA.[3]

### C. Remedy

Now that the Court has determined that the Board violated the TCA, the question of what remedy should be awarded remains. ITW advocates that the Court award its requested injunctive relief of a permit to build the proposed tower; Defendants advocate, in the face of the Court's denial of their cross-motions for summary judgment, for a remand in light of the deficiency of the Board's written decision. Essentially, Defendants want the Board to have another opportunity to provide the Court with the bases of its decision to enable a proper review. But, after

---

[3] Because the Court has found that the Board failed to articulate its denial of a special use permit on substantial evidence in writing as the TCA requires, it need not consider the parties' arguments on effective prohibition.

reviewing applicable law and in light of the facts of this case, this is not the best course.

"Congress has directed that disputes under the TCA must be determined 'on an expedited basis,' 47 U.S.C. § 332(c)(7)(B)(v), and '[a]n award of injunctive relief, rather than a remand for further proceedings, best fulfills this statutory goal.'" *Indus. Tower & Wireless, LLC v. Haddad*, 109 F. Supp. 3d 284, 304 (D. Mass. 2015) (quoting *Brehmer v. Planning Bd. of Town of Wellfleet*, 238 F.3d 117, 121 (1st Cir. 2001)).

> The statutory requirements that the board act within 'a reasonable period of time,' and that the reviewing court hear and decide the action 'on an expedited basis,' indicate that Congress did not intend multiple rounds of decisions and litigation, in which a court rejects one reason and then gives the board the opportunity, if it chooses, to proffer another. Instead, in the majority of cases the proper remedy for a zoning board decision that violates the Act will be an order, like the one the district court issued in this case, instructing the board to authorize construction.

*Nat'l Tower, LLC*, 297 F.3d at 21–22 (citing *Brehmer*, 238 F.3d at 120–22; *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 497 (2d Cir. 1999). The Court is persuaded by the course taken in similar circumstances. The Court orders the Board to grant ITW's special use permit on its application for the proposed telecommunications tower.

III. CONCLUSION

ITW's Motion for Summary Judgment (ECF No. 16) is GRANTED. The DeLuca's Cross-Motion for Summary Judgment (ECF No. 19) and The Town of Foster's Cross-Motion for Summary Judgment (ECF No. 20) are DENIED. In light

9

of the Court's decision on ITW's motion, its two motions to strike (ECF Nos. 25, 26) are DENIED AS MOOT.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

January 22, 2018